# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# Urbana Division

| | |
|---|---|
| **LINDA C. PENNY,** ) | |
|         **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Case No. 08-2270** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
|         **Defendant.** ) | |

# ORDER

In April 2007, Administrative Law Judge (hereinafter "ALJ") Gerard J. Rickert denied Plaintiff Linda C. Penney's application for a period of disability insurance benefits. ALJ Rickert based his decision on a finding that Plaintiff was able to perform all of her past relevant work.

In November 2008, Plaintiff filed a *pro se* Complaint for Judicial Review (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In May 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#12). In July 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#15). After reviewing the administrative record and the parties' memoranda, the Court **DENIES** Plaintiff's Motion for Summary Judgment **(#12)**.

## I. Background
### A. Procedural Background

The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In August 2005, Plaintiff filed an application for disability insurance benefits, alleging disability beginning June 15, 2003. The agency denied Plaintiff's application initially in November 2005 and on reconsideration in April 2006. In May 2006, Plaintiff filed a request for a hearing. In February 2007, the ALJ held a hearing. An attorney represented Plaintiff at the hearing. The ALJ subsequently issued a decision in April 2007 denying Plaintiff benefits on the

basis that she could perform all of her past relevant work. In August 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. In November 2008, Plaintiff appealed this decision by filing a complaint in this Court pursuant to 42 U.S. § 405(g). Plaintiff seeks outright reversal; in the alternative, she asks the Court to remand the case for a new hearing.

### B.  Factual Background

Plaintiff alleged disability based on fibromyalgia, osteoarthritis, hypothyroidism, hypertension, obesity, celiac disease, and depression. (R. 11-12.) The ALJ found that Plaintiff had severe impairments including fibromyalgia, osteoarthritis, hypothyroidism, hypertension, and obesity. (R. 11.) The ALJ found no medical evidence to support celiac disease and found Plaintiff's depression to be nonsevere. (R. 12.)

In April 2003, Plaintiff's primary care physician, Dr. Narain Mandhan, diagnosed Plaintiff with depression, allergies, hypothyroidism, nail fungus, and weight gain. (R. 223.) Dr. Mandhan increased Plaintiff's Prozac dosage to control her depression. (R. 223.) At Plaintiff's next appointment in May 2003, Dr. Mandhan noted that the increased dosage controlled the depression symptoms, and Plaintiff was "doing well." (R. 222.) Dr. Mandhan also noted Plaintiff's high blood pressure. (R. 222.) In June 2003, Dr. Mandhan noted Plaintiff's hypertension. (R. 221.) In July 2003, Plaintiff requested that Dr. Mandhan write her a letter to discontinue her "Curves" exercise sessions because of a muscle strain. (R. 220.) Later in July 2003, Dr. Mandhan noted that Plaintiff's muscle strain had resolved and her hypertension had improved. (R. 219.)

In April 2004, Dr. Mandhan noted that Plaintiff complained of pain from fibromyalgia, a condition she had for the past fifteen years. (R. 216.) She also noted that Plaintiff's arthritis pain was worsening and that Plaintiff cried during the visit. (R. 216.) Plaintiff was taking both Darvocet and Tylenol to control her pain. (R. 216.) Dr. Mandhan instructed Plaintiff to discontinue the Darvocet and Tylenol because they would damage her liver if she took too much. (R. 214.) Dr. Mandhan prescribed Skelaxin as a substitute. (R. 214.) Later in April, Plaintiff

visited Dr. Mandhan and reported that Prozac helped the depression and she was overcoming the fibromyalgia flare, but that her new job was very stressful. (R. 215.) At Plaintiff's next visit, Dr. Mandhan again noted that Plaintiff's depression had improved, but she had quit her job because of her inability to handle the tasks involved. (R. 212.) Plaintiff was taking Flexeril, and also renewed her Darvocet prescription. (R. 212.) Dr. Mandhan told Plaintiff that if she continued to have problems with her fibromyalgia and arthritis, she could look into filing for disability. (R. 212.) The clinic notes state that Plaintiff "seems to be positive and motivated and continues to look for employment in the meantime." (R. 212.) In July 2004, Plaintiff reported less pain and told the doctor that she continued to exercise although her right elbow was painful. (R. 211.) Plaintiff stated that she felt fatigued, but Dr. Mandhan could not determine an objective reason for the fatigue. (R. 211.) Plaintiff continued to see Dr. Mandhan regularly. (R. 208-10, 279-82.) In August 2006, Plaintiff told Dr. Mandhan that she was feeling "a lot better now" and had quit smoking, and Dr. Mandhan observed that her depression seemed much better. (R. 280.)

Plaintiff also received treatment from two chiropractors, Dr. Kevin Gray and Dr. Robert Middleton. Dr. Gray treated Plaintiff regularly from June 2003 until March 2004 for exacerbations of chronic pain in the back, neck, and other joint regions. (R. 197-204.) Dr. Gray generally commented that Plaintiff showed excellent response to her treatments. (R. 199, 203.) In 2004 and 2005, Dr. Middleton treated Plaintiff for muscle and back pain, spasms, and other joint pain. (R. 259-64.) He wrote a letter in May 2005 stating that Plaintiff could return to work. (R. 271.) In April 2006, Dr. Middleton performed an evaluation where he assessed Plaintiff's ability to walk, bend, stand, stoop, sit, and turn at a 20% - 50% reduced capacity, and assessed her ability to climb at more than a 50% reduced capacity. He also opined that she could lift no more than 20 pounds. (R. 270.)

Plaintiff underwent a physical consultative examination in October 2005. (R. 224-28.) A state agency physician reviewed the evidence in November 2005 and concluded that Plaintiff could perform light work with frequent climbing of ramps/stairs, frequent balancing, occasional climbing of ladder/rope/scaffolds, and occasional stooping, kneeling, crouching, and crawling.

3

(R. 230-31.)  Plaintiff underwent a psychological consultative examination in March 2006.  (R. 240-42.)  A state agency psychologist reviewed the evidence in April 2006 and determined that Plaintiff did not have a severe mental impairment.  (R. 257.)

The ALJ determined that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform work requiring her to lift 10 pounds frequently and 20 pounds occasionally.  (R. 13.)  The work should not require the use of ladders, ropes, or scaffolds; no more than occasional kneeling, crouching, and crawling; and no more than occasional use of stairs or ladders.  (R. 13.)  The ALJ further determined that Plaintiff did not have a severe mental impairment.  (R. 12.)

## II.  Standard of Review

In reviewing an ALJ's decision, the Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).  Finally, the Court gives considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show those findings are patently wrong.  *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).

### III.  Analysis

Plaintiff presents three arguments:  (1) the ALJ made a result-oriented RFC determination, failing to properly weigh and consider the record evidence; (2) the ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ erred at step four.

### A.  The RFC Determination

Plaintiff argues that the ALJ made a result-oriented RFC determination.  Specifically, Plaintiff contends that the ALJ:  (1) failed to properly categorize Plaintiff's mental impairment as severe depression, relying only on the opinion of a state agency physician; and (2) improperly assessed Plaintiff's physical RFC by ignoring the conclusions of Plaintiff's chiropractors, relying on the opinion of a state agency physician, ignoring Plaintiff's hand pain, and failing to address Plaintiff's obesity.

#### 1.  Mental RFC

Plaintiff first argues that the ALJ incorrectly characterized her depression as nonsevere.  In support of this argument, Plaintiff first claims that the ALJ must obtain a medical source statement (hereinafter "MSS") from a treating doctor pursuant to 20 C.F.R. § 404.1519n, and the ALJ instead improperly relied on a state agency physician's opinion as to the severity of Plaintiff's depression.  Plaintiff's argument is unpersuasive, because 20 C.F.R. § 404.1519n explicitly states that "the absence of such a [MSS] statement in a consultive examination report will not make the report incomplete."

Plaintiff next argues that the ALJ erroneously accepted the conclusions of the state agency physician who determined that Plaintiff's depression was nonsevere, effectively ignoring the consultative evaluation and its diagnosis of major depression.  Plaintiff's argument fails for two reasons.  First, "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(f)(2)(i).  An ALJ may rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation.  *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004).  Furthermore, even if the consultative evaluation and the state

agency opinions are in conflict, if reasonable minds could differ, the Court must affirm the ALJ's decision if the decision has adequate support.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Here, the ALJ's decision is supported by substantial evidence in the state agency physician's evaluation, thus, the ALJ's conclusions are proper.

Second, in addition to considering the state agency psychologist's opinion, the ALJ evaluated Plaintiff's mental state pursuant to the four broad areas of functioning in 20 C.F.R. § 404.1520a(c)(3); i.e., activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation.  (R. 12.)  The ALJ provided a detailed analysis of these four functional areas, drawing from the objective record as well as Plaintiff's testimony at the hearing.  He noted that Plaintiff was a student during her alleged period of disability, she takes care of her finances, and she never sought mental health treatment beyond taking medication prescribed by her primary care physician.  The Court also notes that Plaintiff admitted at the hearing that "the mental part was not the problem."  (R. 48.)  The ALJ's independent analysis of Plaintiff's functioning supports his conclusion that Plaintiff's mental impairments were not severe.

Finally, Plaintiff contends that the ALJ failed to take into account her combination of impairments including her mental limitations.  Plaintiff points to no evidence in the record that shows her mental impairment in combination with her other impairments caused an increased RFC limitation.  Plaintiff bears the burden of providing medical evidence that supports her purported limitations.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).  Plaintiff has not done so.  She simply states that the ALJ did not properly assess her combination of impairments by omitting her purported mental limitation.  However, Plaintiff's testimony that "the mental part was not the problem" is significant evidence that she did not have a mental condition limiting her ability to work.  Plaintiff has not presented evidence as to how the combination of her impairments limited her ability to work beyond the ALJ's RFC finding, thus her argument is unpersuasive.

For these reasons, the ALJ's decision regarding Plaintiff's mental impairment is supported by substantial evidence, and the Court declines to remand the matter on this basis.

### 2. Physical RFC

Plaintiff next argues that the ALJ improperly determined her physical RFC because he ignored the opinions of Plaintiff's chiropractors Dr. Gray and Dr. Middleton and instead relied on the state agency physician's physical assessment. Plaintiff's argument is unpersuasive for several reasons. As previously stated, an ALJ may rely on opinions from state agency physicians. *See Flener*, 361 F.3d at 448. Again, however, the ALJ went beyond this requirement and thoroughly discussed the medical treatment Plaintiff received from her chiropractors in his decision. (R. 14, 16, 18.) The ALJ stated that the evidence documented "exacerbations of pain," but that the subjective degree of limitation and pain were not consistent with the claimant's reported activities or the medical record. The ALJ's RFC determination was "generally consistent" with the opinion of the state agency evaluator (R. 18), and in fact, was also consistent with the opinion of Plaintiff's chiropractor, Dr. Middleton. Both the state agency consultant and Dr. Middleton suggested that Plaintiff be limited to no lifting over 20 pounds. Dr. Middleton's evaluation concluded that Plaintiff had a 20 % - 50% reduced capacity to walk, bend, stand, stoop, sit and turn, and more than a 50% reduction in her ability to climb. This is consistent with the ALJ's RFC finding limiting Plaintiff to light work with no use of ladders, ropes, or scaffolds, and only occasional kneeling, crouching, crawling, and use of stairs or ladders.

Plaintiff also argues that the ALJ ignored evidence of Plaintiff's hand limitations and obesity. Again, Plaintiff did not refer to any evidence in the record to support her argument that these conditions limited her ability to work. Moreover, the Court has reviewed the record and found no evidence that Plaintiff's hand problems limit her ability to work. As to obesity, Plaintiff recited case law stating that the ALJ must consider Plaintiff's obesity, but again cited no evidence in the record regarding the effect obesity had on her medical conditions. In the absence of such evidence, the ALJ cannot be criticized for not articulating the effects of obesity on Plaintiff's ability to work. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating that ALJs must not succumb to the temptation to play doctor and make their own independent medical findings). The ALJ properly "adopted the limitations suggested by the . . . reviewing doctors"

who were aware of Plaintiff's obesity. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Because Plaintiff failed to present evidence that her hand problems or obesity limit her ability to work, these arguments are unpersuasive. Accordingly, the Court cannot conclude that the ALJ erred by his determination of Plaintiff's physical RFC.

### B. Credibility

Plaintiff next argues that the ALJ mischaracterized her activities, leading to an improper credibility determination. Specifically, Plaintiff argues that: (1) Plaintiff's activities limit her more than the ALJ acknowledges; (2) the ALJ ignored side effects from Plaintiff's medications; and (3) the ALJ ignored Plaintiff's obesity which would lend support to her complaints of pain.

Plaintiff conteds that the ALJ mischaracterized her daily activities. Rather than state how and where in his decision the ALJ erred, Plaintiff repeats her testimony regarding her activities. (#13, p. 16.) Plaintiff cannot support an argument that her testimony is credible by reciting her own testimony. Determination of whether that testimony is credible is the very function of the ALJ in this regard.

When evaluating an ALJ's credibility determination, courts give great deference to the ALJ's assessment because of his ability to see and hear witnesses who testify at the trial. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006). Therefore, courts will generally not disturb an ALJ's credibility determination as long as it has some support in the record. *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993). The Seventh Circuit court has stated that, when reviewing a credibility determination, a court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413 (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)). "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong." *Id.* at 413-14. The ALJ's decision "must contain specific reasons for the finding on credibility" and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In this case, the ALJ acknowledged that Plaintiff experiences some pain and limitations, but noted that she is able to lead a "relatively active life style despite her health problems." (R. 18.) The ALJ noted that Plaintiff lives independently and finished her bachelor's degree after her alleged onset date. He also described some of her activities and concluded that the "subjective degree of limitation and pain are not consistent with the claimant's reported activities or the medical record." (R. 18.) Thus, the ALJ articulated his reasons for finding that Plaintiff's claim of total impairment was not entirely credible. In light of the deferential standard for assessing credibility, the Court cannot conclude that this credibility determination was patently wrong.

### C.  Vocational Expert Testimony

Plaintiff also argues that the ALJ erred at step four and that the vocational expert (hereinafter "VE") improperly concluded that Plaintiff could perform her past relevant work. Specifically, Plaintiff contends that: (1) the ALJ's improperly included several of Plaintiff's non-SGA-level jobs in her past relevant work; (2) the VE improperly classified Plaintiff's SGA-level jobs; (3) the ALJ failed to properly analyze whether Plaintiff could perform her past relevant work; and (4) the ALJ gave the VE an incomplete hypothetical question.

Plaintiff first argues that her past jobs as an accounting clerk, bookkeeper, and food tester were not performed at the substantial gainful activity (hereinafter "SGA") level and therefore the ALJ erred by categorizing them as past relevant work. *See* 20 C.F.R. § 404.1560 (stating that work must be performed at the SGA level to be considered "past relevant work"). The ALJ stated that Plaintiff's prior work history included positions as an accounting clerk, bookkeeper, sales clerk, food tester, wire inspector, and laboratory tester. (R. 18.) Defendant concedes that Plaintiff's jobs as accounting clerk, bookkeeper, and food tester were not performed at SGA level, and thus the ALJ erred by including them. Nevertheless, Plaintiff performed her jobs of sales clerk, wire inspector, and laboratory tester at the SGA level. (R. 130, 193.) At the hearing, the VE testified that, based on the ALJ's RFC, Plaintiff could perform those jobs. (R. 18.) Thus, this error is harmless.

9

Plaintiff next argues that the VE improperly classified her three SGA-level jobs. Plaintiff claims that her position as a sales clerk was actually that of an assistant manager, her position as a wire inspector was actually that of a laboratory supervisor, and her position as a laboratory tester was that of a laboratory manager. Plaintiff relies on her work history report, which she prepared prior to the hearing, for these job titles. (R. 130.)

An ALJ is justified in relying on a VE's testimony unless there is an apparent conflict between the VE's testimony and the DOT. *See* SSR 00-4p (stating that "[w]hen there is an apparent unresolved conflict between [the] VE . . . and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . to support a determination or decision about whether the claimant is disabled"). Thus, the ALJ must explain any conflict between the VE's testimony and the DOT only when the discrepancy was "identified" - that is, if the claimant or his attorney, or the ALJ on behalf of the claimant, noticed the conflict and asked for clarification. *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) (stating that when no one questions the VE's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion); *Powers v. Apfel*, 207 F.3d 431, 436-37 (7th Cir. 2000). If a claimant's attorney does not question the basis of the VE's testimony, he forfeits that objection unless the error is apparent. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004). Challenging a discrepancy between the VE's testimony and the DOT after the hearing is too late. *Id.* Plaintiff had ample opportunity at the hearing to cross-examine the VE, and in fact did ask the VE questions. In this case, the record reflects that Plaintiff's attorney made no objection at the hearing to the VE's choice of job titles for Plaintiff's past work. The VE classified Plaintiff's past relevant work based on his expert knowledge in the field and the information provided by Plaintiff in her work history report. The Court will not speculate at this point as to the VE's determination of Plaintiff's job titles under the *Dictionary of Occupational Titles*.

Plaintiff next argues that the ALJ failed to properly analyze specific requirements of her past jobs. In support, she relies on *Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991), in which case, the claimant worked first as a welder and then in a painting position that required climbing ladders and working in slippery conditions. *Id.* at 517. The Court remanded that case

because the ALJ did not properly determine the claimant's ability to meet the specific demands of his job. *Id.* at 519. *Nolen* is distinguishable because there, the ALJ did not have the benefit of VE testimony which specifically addressed Plaintiff's past relevant work, but in the present case, the ALJ relied "upon the vocational expert's opinion relative to the physical and mental demands of the work." (R. 19.) Thus, contrary to Plaintiff's assertions, the ALJ did take into account Plaintiff's limitations as applied to her specific job titles. The VE testified that, given those limitations, Plaintiff could perform her specific past work. In addition, the VE listed the occupationally significant characteristics of Plaintiff's past relevant work in his past relevant work summary. (R. 193.) Thus, the ALJ did not err when assessing Plaintiff's past relevant work.

Plaintiff next argues that the ALJ's hypothetical question to the VE was incomplete because it did not incorporate Plaintiff's mental limitations or her limitations in standing and walking. The Court previously concluded that the ALJ did not err in assessing Plaintiff's mental and physical limitations in determining Plaintiff's RFC. The ALJ's hypothetical question included all of Plaintiff's limitations as described in the RFC. Accordingly, the ALJ's hypothetical to the VE was complete.

### IV.  Summary

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for Summary Judgment **(# 12)**.

ENTER this 13th day of May, 2010.

                                                  s/ DAVID G. BERNTHAL
                                                  U.S. MAGISTRATE JUDGE